10 OCTOBER 2026

CLERK OF THE U.S. DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF ILLINOIS

RE: JOHNSON V. WEXFORD

DEAR SIR/MADAM:

I AM THE PLAINTIFF IN THE ABOVE NAMED CASE; I REQUEST THAT YOU PLEASE FILE THE INCLUDED COMPLAINT WITH THE COURT ON MY BEHALF AND MAIL ME A STAMP FILED COPY TO THE NAME AND ADDRESS PROVIDED BELOW. SHOULD YOU HAVE ANY QUESTIONS OR COMMENTS DO NOT HESITATE TO INCLUDE THEM IN YOUR MAILING.

I WANT TO THANK YOU FOR YOUR TIME AND ASSISTANCE IN THIS MATTER.

SINCERELY

William Johnson PRO SE

WILLIAM JOHNSON #M01525
P.O. BOX 1000
MENARD, IL 62259

# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM JOHNSON, M01525<br>Plaintiff,<br>V. | Case No. 26-cv-1421-DWD |
| WEXFORD HEALTH SOURCES INC.,<br>CENTURIAN INC.,<br>LATOYA HUGHES,<br>ANTHONY WILLS,<br>MATTHEW PLUMMER,<br>JOHN/JANE DOES #1, #2, #3<br>PHILLIPPA DEVENNEY,<br>ANGELA CRAIN<br>TARA CHADDERTON<br>SANDRA GOVRO<br>CONNIE DOLCE AND<br>UNIDENTIFIFIED JOHN/<br>JANE DOES ET AL.,<br>Defendants | JURY TRIAL DEMANDED |

## EMERGENCY INJUNCTION AND VERIFIED CIVIL RIGHTS ACT COMPLAINT TITLED 42 SECTION 1983 U.S. CODE

This is a civil rights complaint filed by William Johnson ("Johnson"), pro se, Plaintiff, a State of Illinois prisoner, under 42 U.S.C. section 1983 alleging United States Constitutional Rights violations under the 8th and 14th Amendments to the United States Constitution. Johnson also alleges the Tort of Negligence and Intentional Infliction of Emotional Distress. And request emergency injunctive relief.

## JURISDICTION

1. The Court has jurisdiction over Johnson's claims of violation of Federal Constitutional Rights under 28 U.S.C. section 1331(1) and 1343.

2. The Court has supplemental jurisdiction over Johnson's State Law Tort claims under 28 U.S.C. section 1363.

## PARTIES

3. The Plaintiff, William Johnson, was incarcerated at Menard Correctional Center ("Menard") during the events described in this complaint, and is currently housed within Menard.

4. Defendant, Wexford Health Sources Inc., ("Wexford") was the sole healthcare provider for the Illinois Department of Corrections ("IDOC") inmates, was employed by IDOC at all relevant times in this complaint. Wexford is obligated by Illinois Statute to pay any judgment entered against Defendants employed by or contracted for them in their official capacities. In addition each of the other subordinate Defendants acted as an agent of Wexford while employed at Menard. Wexford is liable for all torts committed by its subordinate Defendants and employees while employed at Menard, pursuant to the doctrine of respondeat superior. Wexford is additionally responsible for the policies and practicies

of Wexford. Wexford is sued in its official and individual capacities.

5. Defendant Centurian Inc. ("Centurian") is the sole healthcare provider for the IDOC inmates, was employed by IDOC at all relevant times in this complaint. Centurian is obligated by Illinois Statute to pay any judgment entered against Defendants employed by or contracted for them in their official capacities. In addition each of the other subordinate Defendants acted as an agent of Centurian while employed at Menard. Centurian is liable for all torts committed by its subordinate Defendants and employees while employed at Menard, pursuant to the doctrine of respondeat superior. Centurian is additionally responsible for the polices and practicies of Centurian. Centurian is sued in its official and individual capacities.

6. Defendant, Latoya Hughes, ("Hughes") is the Director of the IDOC and was

and agents at Menard pursuant to the doctrine of respondeat superior. Will is additionally responsible for the policies and practicies at Menard. Wills is sued in his official and individividual capacities.

8. Defendant, Matthew Plummer, ("Plummer") is the Chief Executive Officer ("CAO") at Menard and was employed by IDOC at all relevant times in this complaint. Plummer is responsible for supervising, training, and disciplining officers, employees, and agents at Menard. He is responsible for all torts committed by his officers, employees, and agents at Menard pursuant to the doctrine of respondeat superior. Plummer is additionally responsible for the policies and practicies at Menard. Plummer is sued in his official and individual capacities.

9. Defendants, John/Jane Does #1, #2 ("J/J #1, #2") are Assistant Wardens at Menard on the dates 01/02/22, throughout 07/05/26, at

all relevant times in this complaint, are employed by Menard. John/Jane Does #1, #2 are both responsible for supervising, training, and disciplining officers, employees, and agents of Menard. John/Jane Doe #1, #2 are sued in individual and official capacities.

10. Defendant, John/Jane Doe #3, ("J/J#3") was the Medical Director at Menard on or about the dates 01/22/22 throughout 7/01/26, at all relevant times in this complaint was employed by Menard. J/J#3 is responsible for medical treatment at the Healthcare Unit ("HCU") at Menard. J/J#3 is sued in his/her official and individual capacities.

11. Defendant, Phillippa Devenney ("Devenney") is a Medical Doctor and Medical Director at Menard on or about the dates 07/01/25 throughout 10/10/26 at all relevant times in this complaint was employed by Menard. Devenney is responsible for medical treatment at the HCU at Menard. Devenney is sued in her official and individual capacities.

12. Defendant, Angela Crain, ("Crain") is/was the Healthcare Unit Administrator ("HCUA") at Menard on or about the dates 09/01/22, throughout 08/31/26, at all relevant times in this complaint was employed by Menard. Crain is responsible for managment of the HCU at Menard. She is sued in her official and individual capacities.

13. Defendant, Tara Chadderton, ("Chadderton") is a Nursing Supervisor ("NS") at Menard at all relevant times in this complaint. Chadderton is employed at Menard. She is sued in her official and individual capacities.

14. Defendants, Unidentified John/Jane Does et al., ("J/J et al.,") are/were employees of Menard on or about the dates 01/01/22, throughout 08/31/26 at all relevant times in this complaint they are sued in their official and individual capacities.

15. Defendant, Sandra Govro ("Govro") is a Nurse Practitioner ("NP") at Menard at all relevant times in this complaint. Govro is employed by Menard. She is sued in her official and individual capacities.

16. Defendant, Connie Dolce, ("Dolce") is/was the Director of Nursing ("DON") at Menard at all relevant times in this complaint is/was employed by Menard. Dolce is responsible for supervising and training the nurses at the HCU at Menard. Dolce is sued in her official and individual capacities.

## COLOR OF STATE LAW/JOINDER

17. All the Defendants' have acted, and/or continue to act, under color of State Law at all times relevant to this complaint. This multi-claim, multi-defendant complaint is properly joined where the claims did arise from the same factual situation, where the claims against Defendants' did also arise out of the same transaction, occurrence, or series of transactions or occurrences, and where a common question of law or fact does exist between the Defendants'.

## PREVIOUS LAWSUITS

18. 1. William Johnson v. Rob Jeffreys etal
case No. 21-CV-779-NJR dismissed

2. William Johnson v. Kim Foxx
case No. 22-CV-4223 dismissed
strike

3. William Johnson v. Anthony Wills
case No. 24-CV-02794 pending

## STATEMENT OF FACTS

19. This is a verified civil rights complaint filed by William Johnson pro se, a State of Illinois prisoner housed at Menard under 42 U.S.C. Section 1983, alleging United States Constitutional Rights violations under the 8th and 14th Amendments.

20. Johnson is a long term general population prisoner currently being housed at Menard C.C. a Maximum Security Facility.

21. The gravamen of this multi-claim complaint is that Johnson has been conspicuously denied rights and privilages, subjected to cruel and unusal punishment (and other such Constitutional and State law deprivations visited pursuant to IDOC, Wexford, and Centurian's "customs") due to Defendants deliberate indifference to Johnson's serious

medical needs, denial of due process and equal treatment under the law, as a direct result of Defendant's actions and other as below described.

## DENIAL OF MEDICAL CARE

22. On or about 09/10/21, Johnson began experiencing pain in his groin left ("L") testicle lower back and lower abdominal pain. Johnson was unable to sleep due to the excruciating pain he was in. When he was able to fall asleep it was only temporary; the sharp pain from his groin, (L) testicle and lower back would immediately wake him up.

23. Inaddition to being awaken by the pain Johnson had to get up to urinate 5-6 times a night. This affects his daily activities as well; Johnson is tired from lack of sleep because of his disrupted

inconsistant sleep pattern, limited range of motion and painfull movement due to his undiagnosed Ⓛ hydrocele.
Not only does Johnson's frequent excessive urination affect him at night; but throughout the day he urinates multiple times an hour.
Johnson is unable to sit or stand for long periods of time; when he sits down it feels like he's sitting on a golf ball.
And when he walks inaddition to the pain from his Ⓛ hydrocele it feels like he has a tennis ball inside his scrotum.
Johnson is unable to lift or carry heavy or bulkly items and he is in constant pain. Johnson sent written requests slips to sickcall and the HCU concerning the above said issues, to no avail.

24. On or about 10/03/21, Johnson submitted additional request slips to the HCU and sickcall concerning the pain in his Ⓛ testicle, groin, lower abdomen and lower back, to no avail.

25. On or about 12/05/21, Johnson sent another written request slip to the HCU and sickcall concerning the above said medical conditions. And the HCU's failure to call him for his yearly physical exam: lab test results, TB test. And the opportunity to speak face to face with a Doctor or NP concerning the above said medical conditions; that are not being addressed or even acknowledged by the HCU, to no avail.

26. On or about 01/03/22, Johnson made his 1st attempt to file a grievance concerning the HCU's refusal to address or acknowledge his numerous written sickcall request concerning the above said medical conditions (But not limited to) and his missed yearly physical exam, he received no answer.

27. On or about 01/18/22, Johnson made his 2nd attempt to file a copy of the same grievance, to no avail.

28. On or about 02/06/22, Johnson made his 3rd attempt to file a copy of the grievance; this time he made it directly to The Administrative Review Board ("ARB"). Because of Menards failure to address or even acknowledge his grievance. The ARB refused to address Johnson's grievance or even assign the grievance a tracking number.

29. Johnson continued to experience severe pain from his undiagnosed Ⓛ hydrocele inaddition to the pain in his lower abdomen, lower back, and frequent excessive urination. All of the above said issues (But not limited to) significantly affect his night time sleeping pattern and daily activities. Johnson continued to submit written request slips to the HCU and sick call, to no avail.

30. On or about 05/27/22, Johnson went on a medical writ to an outside hospital for a esophageal endoscopy and

colonoscopy. Prior to, during and after the above said procedures Johnson complained of lower back, lower abdomen and groin pain. Johnson was required to submit blood and urine samples as well as two 12 lead EKG's. Medical personnel informed Johnson that his urine samples were severly abnormal, which could account for his back pain. Johnson was never informed of the other test results following his writ and Johnson still suffered from his undiagnosed ① hydrocele lower back, and lower abdominal pain, frequent and excessive urination

31. On or about 06/27/22, Johnson filed another grievance concerning the deliberate indifference to and the denial of medical care for Johnson's serious medical needs by not providing any medical care at all for his known lower back, lower abdominal, and groin pain inaddition to his frequent and excessive urination by Defendants: J/J#3, Dolce, Crain, J/J#1, #2 and

J/J et al., Defendants: Wexford, Hughes and Wills failure to correct known systemic deficiencies in the healthcare system, train, supervise, discipline, and correct their subordinate Defendants: J/J #1, #2, #3, Crain, Dolce and J/J et al., when made aware of above said issues.

32. On or about 08/30/22, Johnson went to the HCU for x-rays of his back in response to sickcall referals. Since the above x-rays were taken Johnson had not returned to the HCU for any other reason; Johnson continued to send written request slips to the HCU, to no avail.

33. On or about 10/04/22, Johnson filed a grievance concerning deliberate indifference to and denial of medical care for his serious medical needs Johnson had been experiencing lower back, lower abdominal, and groin pain. Inaddition to his undiagnosed Ⓛ hydrocele and frequent and excessive urination for almost a year prior to filing this grievance.

Johnson submitted numerous written request slips to sickcall and the HCU, to no avail. Although Johnson was seen at sickcall; all the nurses said there was nothing they could do for him he would have to go to the HCU. The nurses repeatedly told Johnson that they put him on the list to see the Doctor or NP, but he has not been called yet. Johnson's grievance followed concerning Defendants: J/J #1, #2, #3, Crain, Dolce and J/J et al., failure to provide medical care for and deliberate indifference of Johnsons serious medical needs as described above. Defendants: Wexford, Hughes and Wills failure to correct known systemic deficiencies in the healthcare system, train, supervise, discipline, and correct their subordinate Defendants: J/J #1, #2, #3, Crain, Dolce and J/J et al., when made aware of above said issues.

34. On or about 12/26/22, Johnson's 3rd attempt to file grievance #58-1-23 was successful the 1st and 2nd attempts on 11/10/22, and 12/01/22, respectively

were unsuccessful; as those two grievances disappeared in the institutional grievance process. Johnson's grievance concerned the denial of medical care and the deliberate indifference to Johnson's serious medical needs by not providing any medical care for his known lower back, lower abdominal, and groin pain inaddition to his frequent and excessive urination by Defendants #1, #2, #3, Crain, Dolce and J/J et al., Defendants: Wexford, Hughes and Wills failure to correct known systemic deficiencies in the healthcare system, train, supervise, discipline, and correct their subordinate Defendants: J/J #1, #2, #3, Crain, Dolce and J/J et al., when made aware of above said issues.

35. On or about 01/20/23, Johnson was seen by NP Dearmond who ordered an ultra sound of the testicles/scrotum, an abdomen X-ray was ordered. A genital and prostate exam were given NP Dearmond informed Johnson that he

had an enlarged prostate which should have a biopsy and a possible Ⓛ hydrocele for which he needed to see a Urologist. Johnson informed Dearmond of the severe pain in his lower back, lower abdomen, and groin, his limited range of motion, inability to lift heavy objects or run. In addition to his frequent and excessive urination that interrupts his night time sleep and daily activities. Dearmond told Johnson that both a hydrocele and enlarged prostate could be the cause for these above said conditions. She went on to say that Johnson should have a biopsy on his prostate to ensure that was not cancerous. No pain medications prescribed.

36. On or about 02/25/23, Johnson mailed letters to Defendants: Wexford and Hughes concerning the denial of medical care and deliberate indifference to Johnson's serious medical needs by not providing any medical treatment for his known enlarged prostate, possible Ⓛ hydrocele, lower back, lower

abdominal, and groin pain. In addition to the frequent and excessive urination as well as the possible undiagnosis of prostate cancer by Defendants: Wills, J/J #1, #2, #3, Crain, Dolce and unidentified J/J et al., at Menard (But not limited to). Johnson never received an answer to his letters.

37. On or about 03/07/23, Johnson went to a sickcall appointment and was prescribed Flomax for six months; Johnson still had not seen a Urologist for the above said conditions which started over 18 months ago. Johnson's pain and suffering continued unabated, with no end in sight. No pain medications prescribed.

38. On or about 06/27/23, Johnson went to an outside hospital to see a Urologist were he was informed that he had a Ⓛ hydrocele and a enlarged prostate. Johnson still did not receive any pain medication for his Ⓛ hydrocele or a biopsy on his prostate; even after

do not panic. The doctor said he understood, but during the surgery Johnson's HR dropped to about 45 BPM. The doctor gave Johnson atropine or some other medication to increase his HR which sent his HR to 130 BPM into Atrial Fibrillation Johnson's HR increased to almost 3 times his normal HR. As a result Johnson spent 3 days in the hospital until his heart rhythm converted back to Normal Sinus Brady. Johnson returned to Menard.

40. On or about 11/20/23, Johnson went for a follow up appointment with a Urologist concerning his Ⓛ hydrocele surgery; Johnson's appointment was at an outside hospital. The pain and swelling were still present by all accounts Johnson's hydrocele surgery was unsuccessful. The Urologist told Johnson that there were only two Urologists, contracted by Wexford active in Southern Illinois. Johnson still has not received a biopsy on his enlarged prostate or bladder. Johnson returned to Menard.

informing the Urologist of his symptoms: lack of sleep, urinating 5-6 times a night, unable to lift heavy objects, limited range of motion, lower back, lower abdominal, and groin pain for almost 2 years. The doctor did prescribe double the amount of Flomax from .04mg to .08mg. The doctor also told Johnson that he would operate on his Ⓛ hydrocele sometime before the end of the year due to the severity of it; but he had to wait for approval and scheduling from Wexford before he could operate. Johnson was sent back to Menard.

39. On or about 10/31/23, Johnson went to an outside hospital for a hydrocele surgery on his Ⓛ testicle. Due to complications during the surgery Johnson almost died on the operating table. Before the surgery Johnson informed the Anesthesiologist that his resting heart rate ("HR") was about 55 beats per minute ("BPM") which is normal for him. Johnson also informed the doctor that when he goes to sleep it drops to 44 BPM so please

41. On or about 11/22/23, Johnson went to an outside hospital for his 2nd ultra sound concerning his hydrocele surgery. Since the hydrocele surgery Johnson has experienced increased pain and swelling in his Ⓛ testicle (surgery site).

42. Johnson has submitted numerous sickcall and HCU request slips to the HCU since the November 2023, ultrasound, to no avail. Johnson has been to sickcall several times from the end of December 2023, to the end of January 2024, concerning the above medical conditions. The sickcall nurses recognized and acknowledged his medical issues; but were unable to treat them. The nurses informed Johnson that they could only recommed him to see the NP at the HCU; that Johnson should file a grievance.

43. On or about 01/29/24, Johnson filed another grievance concerning the deliberate indifference to Johnson's serious medical needs and denial of medical care by Defendants: Wexford, Hughes,

Wills, J/J #1, #2, #3, Crain, Dolce and J/J et al., (But not limited to) by denying Johnson access to a Urologist for his known ① hydrocele and enlarged prostate; inaddition to denying him medical treatment for the above said medical issues. Defendants: Wexford, Hughes, and Wills failure to correct known systemic deficiences in the health care system, train, supervise, discipline and correct their subordinate Defendants: J/J #1, #2, #3, Crain, Dolce and J/J et al., (But not limited to) when made aware of above said issues. Johnson is suffering lower back, lower abdominal, and groin pain unabated. Inaddition to waking up 5-6 times a night to urinate, still unable to lift heavy objects, limited range of motion, and no pain relief.

44. Johnson was experiencing sharp excruciating pain in his groin, lower back, and lower abdomen whether moving or remaining still. When Johnson sits for long periods of time it feels like he is

sitting on a golf ball. And when he walks or remains on his feet it feels like he has a tennis ball in his scrotum.

The untreated medical needs significantly affected both Johnson's sleep pattern and daily activities. Johnson is unable to perform simple tasks without difficulty such as tying his shoes, putting on pants or underwear, bending over to pick up dropped items, climbing a large number of stairs, bathing, taking a seat, standing up from a seated position on a toilet or chair etc.

Johnson was very mobile and active before. Since the Ⓛ hydrocele and enlarged prostate appeared he has had to learn to perform daily activities in a more deliberate way: holding on to a solid structure such as a rail, chair, or a pole in trying to stand up from a seated position, in order to use the bathroom multiple times an hour. Johnson also had to learn to use those same structures when lowering himself into a seated position to use the toilet or sit in a

chair, or bend over to pick up an item etc.

44. Johnson felt powerless to do anything to improve his situation. The Defendants have done nothing to affirmatively address his serious medical needs; even when made aware of them by written letters, sickcall request slips, HCU request slips, Emergency Grievances, or face to face meetings with front line medical staff and Supervisory medical staff. Almost 3 years have gone by since Johnson first notified Defendants (But not limited to) of the above said medical issues. He has received no effective care for his known injuries. Johnson's Ⓛ hydrocele and prostate are only increasing in size and pain and there is nothing he can do about it at all.
In addition to the pain, limited mobility and sleep deprivation Johnson is worried that he will either lose his Ⓛ testicle and/or then die of prostate cancer or both because of the actions or inactions of Defendants.

The stress, humiliation, embarrament, pain, fear, and despair sent Johnson on a emotional roller coaster that caused Johnson severe emotional distress because of the Defendants conduct as described in this complaint (But not limited to).

45. On or about 02/21/24, Johnson filed another Emergency Grievance concerning the deliberate indifference to his serious medical needs and denial of medical care by Defendants: J/J #1, #2, #3, Crain, Dolce, and J/J et al., by denying Johnson access to medical care for his known Ⓛ hydrocele and enlarged prostate as well as the pain and suffering and limitations caused by them. Defendants: Wills, Wexford, and Hughes failure to correct known systemic deficiences in the healthcare system, train, supervise, discipline, and correct their subordinate Defendants listed above (But not limited to) when made aware of above said issues.

46. On or about 04/25/24, Johnson went to an outside hospital to see a Urologist for his diagnosed Ⓛ hydrocele, enlarged prostate, and overactive bladder. The Urologist informed Johnson he would perform another needed surgery on Johnson's diagnosed Ⓛ hydrocele and order a biopsy on Johnson's enlarged prostate when Menard ("Wexford") approves the above said procedures. The approval never comes and Johnson is left with no recourse to address, muchless treat his known serious medical issues.

47. On or about 05/31/24, Johnson went for another ultrasound of his Ⓛ hydrocele and enlarged prostate. Both the hydrocele and enlarged prostate are still present as diagnosed before and still untreated, by Defendants.

48. On or about 07/23/24, Johnson went to the HCU and saw a Dr. Comparin then Johnson informed him of his ongoing untreated well known serious

medical needs: enlarged prostate, (L) hydrocele, bryxism and the need for a nightguard and two filings for his teeth (But not limited to). Johnson told him about his lower back, lower abdominal, and groin pain. In addition to his excessive frequent urination that happens multiple times an hour and 5-6 times a night which negatively affects his sleeping pattern and his daily activities. Johnson explained he has limited mobility and limited range of motion, his inability to lift heavy objects and difficulty standing and sitting for long periods of time (But not limited to). The Doctor told Johnson there was nothing that he could do except put Johnson in to see a Urologist. Johnson never saw a Urologist and none of the above said medical issues were addressed or treated by Defendants.

49. On or about 10/18/24, Johnson mailed letters to Defendants: Wexford and Hughes concerning the denial of medical

care and deliberate indifference to Johnson's serious medical needs by not providing medical treatment for his known enlarged prostate and Ⓛ hydrocele. Inaddition to all the pain and suffering caused by the hydrocele and enlarged prostate that have been untreated by Defendants: Wills, J/J#1,#2,#3, Crain, Dolce and J/J et al., at Menard (But not limited to). Johnson never received an answer to his letters.

50. On or about 11/05/24, Johnson's Flomax medication for his enlarged prostate was cut in half from 0.8mg to 0.4mg for no reason, except to save Wexford money. Johnson wrote request slips to sickcall and the HCU concerning the reduction of his medication to, no avail.

51. Again Johnson felt powerless to do anything to improve his situation. The Defendants have done nothing and continue to do nothing affirmatively to address his serious medical needs

even when made aware of them by letters, Emegency Grievances, written request slips and face to face meetings. The healthcare system and grievance process; to the extent that they even exist have completely failed Johnson. Johnson's hydrocele surgery was a complete failure and Johnson has never received a biopsy on his enlarged prostate. Johnson consistanly sees other inmates at Menard who are diagnosed with late stage cancer; as well as other medical issues that could have been avoided, but were not. Johnson wonders if he will be next. The stress, humiliation, pain, fear and despair are a constent reminder of his failure to obtain any medical treatment for himself.

52. On or about 07/24/25, Johnson went to an outside hospital to see a Urologist concerning his hydrocele and enlarged prostate. But when he arrived Johnson was informed by the nurse that the appointment was cancelled because

Menard failed to perform the necessary tests (MRI, PSA, Ultrasound etc.) before the scheduled appointment.
As a result Johnson never saw the Doctor. Johnson returned to Menard. At this point it has been more than 15 months since Johnson last saw a Urologist and 21 months since his failed hydrocele surgery and no biopsy on his enlarged prostate; the pain and suffering continue.

53. On or about 10/11/25, Johnson sent in a medical request form to the HCU to receive a copy of his medical records from the medical records office at Menard. Johnson never received a copy of his records from this request.

54. On 11/11/25, Johnson went to the HCU for his yearly physical and saw Defendant Devenney. Devenney never mentioned Johnson's elevated PSA Level of 5.4 which is high and increased from 1.5 in 2023. Even after Johnson

informed her of his (L) hydrocele and enlarged prostate, frequent excessive urination, pain and suffering.

Johnson also explained how the above said hydrocele and enlarged prostate affect his nighttime sleep patterns waking up 5-6 times a night to urinate. And how it affects his daily activities: limited mobility and limited range of motion inability to lift and move heavy objects, inability to sit or stand for long periods of time because of the pain in his groin (But not limited to). Johnson also told Devenney about his Flomax medication being cut in half. She told Johnson that he would have to wait to talk to a Urologist and there was nothing She could do for him.

Johnson asked when he would be able to see a Urologist She said that She did not know. Johnson left with none of his known medical issues being addressed.

55. On or about 11/15/25, Johnson filed an Emergency Grievance concerning the deliberate indifference to his serious

medical needs and denial of medical care by Defendants: J/J #1, #2, #3, Devenney, Govro, Crain, Dolce and J/J et al., by denying Johnson access to medical care for his known Ⓛ hydrocele and enlarged prostate as well as the pain and suffering and limitations caused by them.
Defendants: Plummer, Hughes, and Centurian failure to correct known systemic deficiences in the healthcare system, train, supervise, discipline, and correct their subordinate Defendants listed above (But not limited to) when made aware of above said issues.
Johnson never received an answer to or acknowledgement of this grievance it simply disappeared in the grievance process at Menard.

56. On or about 12/20/25, Johnson filed another grievance concerning the unanswered, unacknowleged or missing grievance filed on or about 11/15/25.
Johnson never received an answer to that grievance either. It disappeared in the institutional grievance process; just

like the Emergency Grievance before it did.

57. Johnson continued to feel powerless to do anything to improve his situation. The above named Defendants still have done nothing to affirmatively address his serious medical needs or decrease his suffering when made aware of them by more written letters, sickcall request slips, Emergency Grievances, or face to face meetings with Defendants (But not limited to). Johnson's known medical issues have gone unresolved for several years. Johnson's prostate and (L) hydrocele are only increasing in size and pain; he is powerless to do anything about at all.
Johnson is terrified that he will die from prostate cancer or lose his (L) testicle or both because of the actions or inactions of the Defendants. The stress and fear brought on by this preventable situation is taking its toll Johnson's mental state and emotional health.

58. On or about 02/02/26, Johnson filed a 2nd request for his medical records to the HCU.

59. On or about 04/01/26, Johnson filed a grievance concerning the HCU's failure to provide him with a copy of his medical records.

60. On or about 04/07/26, Johnson finally received a copy of his medical records from the HCU. While reviewing his lab records Johnson discovered that his PSA Levels jumped from 1.5 normal to 5.4 which is high and a early indicator of prostate cancer. The above Defendants knew or should have known about the above said lab report and the serious implications to Johnson's health but refused to inform him or send him on a medical writ for a biopsy on his enlarged prostate or a hydrocele surgery.
The rapid increase in PSA is a major indicator of cancer in addition to Johnsons other risk factors: his race, age and known BRCA mutation. Dr. Comparin informed Johnson that because of the above said risk factors; an increase in his PSA in a short period of time would require a

biopsy. Johnson has been diagnosed with an enlarged prostate and hydrocele experiences frequent excessive urination, lower back, lower abdominal, and groin pain. Prostate cancer is curable if caught and treated early. Wexford, Centurian, and Menard have a history of not informing inmates and not treating their serious medical issues until they become terminal; just to save money. As of the writing of this complaint Johnson still has not seen a Urologist, the pain and suffering continue.

61. On or about 04/12/26, Johnson filed an Emergency Grievance concerning his high PSA Level, the deliberate indifference to and denial of medical care for Johnson's serious medical needs by Defendants: #1, #2, #3, #4, #5 and J/J et al by denying Johnson access to a Urologist, failing to inform him of his elevated PSA Levels for almost two years and failure to provide any treatment for his known enlarged prostate.

Defendants: Centurian, Hughes, and Plummer's failure to correct known systemic deficiences in the healthcare system, train, supervise, discipline, and correct their subordinate Defendants: J/J #1, #2, #3, #4, #5 and J/J et al. (But not limited to) when made aware of above said issues. Plummer expedited Johnson's grievance as an emergency; but later denied Johnson's grievance in large part because of Chadderton's deliberate mischaracterization of Johnson's medical care by the HCU. Chadderton informed Plummer by memorandum that Johnson was seen by a Urologist on 07/24/25 and Dr. Devenney on 11/11/25 concerning my elevated PSA and enlarged prostate. - not true. As already stated (¶ 52) Johnson never saw the Urologist on 07/24/25, it was cancelled and on 11/11/25, Devenney never mentioned his elevated PSA and refused to discuss his hydrocele and enlarged prostate and Flomax at all.

62. On or about 04/18/26, Johnson mailed letters to Defendants: Hughes, and Centurian by U.S. Postal Service 1st Class mail concerning the denial of medical care for and the deliberate indifference to Johnson's serious medical needs by Defendants: Deveney Plummer, J/J #1, #2, #3, Crain, Dolce and J/J et al at Menard (But not limited to) by failing to inform Johnson of his rapidly increased PSA Level for almost 2 years and failing to provide adequate medical treatment for Johnson's known enlarged prostate and Ⓛ hydrocele for over 2 years. And for failing to provide Johnson access to a Urologist to asses, treat, manage, or prevent Johnson's serious medical issues. Johnson also informed Hughes and Centurian that their subordinate Defendants listed above still refused to provide adequate medicare to Johnson even when made aware of his medical needs by grievances, face to face meetings or request slips. Johnson never received an answer to his letters.

63. On or about 05/26/26, Johnson went to the HCU to see NP Govro. Johnson explained to her how his PSA Level rapidly increased from 1.5 to 5.4 in about 6 months and no one told him or sent him out for a biopsy on his prostate. Johnson also informed her about his Ⓛ hydrocele, how it affects his night time sleep patterns, waking up to urinate 5-6 times a night, limited mobility, limited range of motion, inability to lift and carry heavy objects, inability to sit or stand for long periods of time. And how it affects his daily activities difficulty climbing stairs, bending over, and urinating several times an hour and the constent pain in his lower back, lower abdomen, and groin. Govro informed Johnson that there was nothing she could do for him; he must wait to see a Urologist and she did not know when that would be. Johnson went back to his cell. Govro never performed a physical examination of Johnson's Ⓛ hydrocele.

64. On or about 06/04/26, Johnson went to the HCU to have an ultrasound on his Ⓛ hydrocele that was still present and painfull.

65. On or about 06/08/26, Johnson went to an outside hospital for an MRI of his lower abdomen and prostate. He still has not seen a Urologist for his serious medical needs.

66. On or about 06/09/26, Johnson received a note from Govro that the results of the ultrasound look good. Which is odd because Johnson still has a hydrocele and Govro is not a Urologist and did not perform a digital exam on Johnson's hydrocele.

67. On or about 06/10/26, Johnson filed an Emergency Grievance concerning the deliberate indifference to and the denial of medical care for Johnson's serious medical needs by Defendants: Devenney, Govro, Dolce, Crain, Chadderton, J/J #1, #2, #3, and J/J et al., by denying Johnson

access to a Urologist for his known high PSA Level, enlarged prostate and pain and suffering as described in grievance #K4-0426-1848 in April 2026, when Plummer denied John's grievance based in large part by NS Chadderton's deliberate mischaracterization of the medical treatment that the HCU was providing to Johnson for his serious medical needs as described in (¶¶54,60) of this complaint.

And the Defendants failure to provide Johnson access to a Urologist 2 months later (But not limited to). Defendants: Centurion, Hughes, and Plummers failure to correct known systemic deficiences in the in the healthcare system, train, supervise, discipline, and correct their subordinate Defendants listed above (But not limited to) when made aware of the above said issues.

Johnson never received an answer to his grievance; it appears to be lost in the institutional grievance process.

68. As of 07/30/26, Johnson still has not had any treatment for his known enlarged prostate and Ⓛ hydrocele (But not limited to). Nor has Johnson seen a Urologist since 04/25/24, for his serious medical needs. The pain and suffering Johnson is experiencing continue unabated; as well as the possible undiagnosis of prostate cancer.

69. On or about 08/24/26, Johnson went to an outside-hospital to see a Urologist. The Urologist reviewed the MRI and performed a digital exam on Johnson's Ⓛ hydrocele. He confirmed Johnson's hydrocele was present and was alarmed by his 5.4 PSA which is high. The Urologist told Johnson he would perform another hydrocele surgery on his Ⓛ testicle and do a biopsy on his prostate at the same time; to see whether it was cancerous or not.
But first he needed an ultrasound to compare with the MRI; because Menard C.C. (HCU) did not send the results of Johnson's ultrasound from 06/04/26, at the HCU.

He also ordered another PSA to be done at the hospital during the visit that day. The doctor informed Johnson that as soon as the ultrasound was performed and the results viewed; he would set a biopsy and surgery date because this was serious. Johnson had his blood drawn for the PSA at the hospital and returned to menard C.C.

70. On or about 08/27/26, Johnson went to the HCU to have another PSA test performed.

71. On or about 09/28/26, Johnson received a copy of his medical records from the HCU and discovered that his PSA Level was 20! That is 4 times as high the previous which is an indicator of cancer. Govro's notes on the lab report read: Repeat PSA 2 years - Track please. Johnson contends that at this rate he will be 64 pounds and at stage 3 cancer, if not dead in two years.

72. As of 10/05/26, Johnson still has not had his ultrasound, or been back to see the Urologist concerning his extremely high PSA Level of 20, or had any of his Emergency Grievances, or numerous written request slips to the HCU addressed or even acknowledged. They have effectively disappeared into the institutional grievance process and healthcare system. If Johnson had not ordered his medical records; to learn of his PSA of 20 he would have never known until it was too late, if its not already. Clearly none of the Defendants would have informed him; Johnson contends that they are actively working to conceal his cancer diagnosis until its too late inorder to save money. His stress level is through the roof, he is having a hard time sleeping, eating and urinating. He feels powerless to do anything to change his situation; which has put him on an emotional roller coaster.

73. On information and belief, when a prisoner files a grievance; it reaches the administration, institutional authorities, or staff responsible

for investigating and dealing with the grievances; even if the grievance is never answered.

74. On information and belief, when a prisoner files a grievance, the grievance staff calls the matter to the attention of those individuals responsible for the matter that the grievance concerns.

75. On information and belief when a prisoner places a written request slip in the institutional mail it reaches the intended prison official, department or office it was addressed to; whether or not he receives a response.

76. Johnson was denied medical care for 36- months before being taken to an outside hospital for surgery on his Ⓛ hydrocele. And 4 years and counting without a biopsy on his known enlarged prostate, and 30-months and counting since Johnson last saw a Urologist. And 30 months since Defendants

became aware of Johnson's high PSA Level of 5.4 and not providing Johnson with any treatment for his known Ⓛ hydrocele and enlarged prostate (But not limited to). Johnson's pain and suffering and physical limitations persist as well as the mental and emotional toll it takes on Johnson. The stress, humiliation, and depression and frustration are ever present with Johnson.

77. Johnson was denied medical care when his known Ⓛ hydrocele was not operated on for 24 months. And was denied medical care again after it was disovered that his hydrocele surgery was a complete failure. Johnson has never received a 2nd hydrocele surgery; nor was he provided any other treatment for his swollen, and painfull hydrocele.

78. Johnson was denied medical care when he was not taken to an outside

hospital for a biopsy for his known enlarged prostate and high PSA Level for more than 2 years and counting after it was discovered by Defendants as well as the possible diagnosis of prostate cancer.

79. Johnson was denied medical care when he was not provided pain medication for his known hydrocele. And when his Flomax medication was cut in half for his known enlarged prostate for no reason.

80. On information and belief that when a prisoner places a letter in the cell bars to be mailed out by the U.S. Postal Services it reaches its destination whether or not he receives an answer. <u>Houston v. Lack</u>, 487 U.S. 266, 108 S.Ct. Rule 12(c)

81. The conduct of the Defendants was objectively unreasonable and was undertaken intentionally with malice willfulness and deliberate indifference.

82. Johnson's injuries and the violations of his Constitutional Rights were directly proximately caused by the policies and practices of Defendants which were the moving forces of the violations.

83. Defendants Wexford and Centurian were responsible for inmates state wide medical care generally, staffing, training of staff, payment of medical costs, and the general management of the health care system for all the correctional facilities in IDOC.

84. Defendants J/J #3, Devenney, Crain, Dolce, Govro, Chadderton and J/J et al., are responsible for medical care generally at Menard and for arranging for specialized medical care outside the prison.

85. Defendant Hughes was/is responsible for the IDOC, the State agency that manages the Correctional facilities within the State of Illinois. And

Defendant Hughes had the ultimate responsibility for the promulgation and implementation of IDOC policies and practices and of the management of IDOC.

86. Defendants J/J #1, and #2 are responsible for arranging for specialized care outside the prison and programs inside the prison.

87. Defendants Wills and Plummer were/is responsible for the execution of policies, procedures, and practices at Menard including the supervision, training, discipline of employees, and inmates and management of the HCU. These Defendants are additionally liable for policies/procedures relating to the handling, processing, and dispositions of inmate grievances/grievance process. (But not limited to).

# CLAIMS FOR RELIEF

## COUNT I

## 42 U.S.C. §1983-DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS

88. Johnson incorporates each paragraph of this Complaint as if fully restated here.

89. In the manner described more fully above the Defendants: Wexford, Centurian, Wills, Hughes, Plummer, J/J #1, #2, #3, Devenney, Crain, Dolce, Gouro, Chadderton, J/J et al., acting as supervisors, caregivers, and employees etc. (But not limited to), individually, jointly and in conspiracy with one another, as well as under the color of law and within the scope of their employment were deliberately indifferent to Johnson's serious medical needs inviolation of his rights secured by the 8th and 14th Amendments.

90. As described more fully above Defendants' were deliberately indifferant to Johnson's serious medical needs when made aware of them in person, medical records, request slips, grievances, and letters (But not limited to).

91. As a result of Defendant's deliberate indifference in this count Johnson suffered injury, great mental anguish, humiliation, degradation, physical, and emotional pain and suffering, and other grievous and continuing injuries and damages as setforth above.

92. Johnson's injuries were caused and exacerbated by the policies, practices, and customs of Defendants Wexford, Centurian, Hughes, Wills, and Plummer.

93. At all times relevant to the events described in this Complaint and for a period of time thereto the Defendants referenced in the preceeding paragraph promulgated rules, regulations, polices,

and procedures for the conduct denying inmates access to medical care for their serious medical needs.

Inaddition, the Defendants reference in the preceeding paragraph promulgated rules, regulations, polices and procedures for the training and supervision of employees of Wexford, Centurian, IDOC, and Menard (But not limited to). Moreover, the Defendants referenced in the preceding paragraphs provided training and training materials to employees, agents, officers and others on the subject of medical policies for the treatment of inmates in the healthcare system.

The Defendants and their subordinate Defendants adopted these rules, regulations, policies and procedures such that they became the policies and procedures of Wexford, Centurian, IDOC, and Menard (But not limited to). These rules, regulations, polices and procedures were implemented by employees and agents of Wexford, IDOC, Centurian, and Menard who were

responsible for denying Johnson medical care and who were deliberately indifferent to his serious medical needs when made aware of them.

94. In addition, at all times relevant to the events described in this complaint and for a period of time prior thereto, Defendants Centurian, Wexford, Hughes, Plummer, and Wills had notice of a widespread practice by employees and agents for which inmates such as Johnson were denied medical care for their serious medical needs by said employees and agents (But not limited to).

95. Specifically, at all relevant times and for a period of time prior thereto there existed a widespread practice among the subordinate Defendants, employees, and agents: J/J #1 #2, #3, Devenney, Dolce, Crain, Govro, Chadderton and J/J et al., of Defendants: Centurian, Wexford, Hughes, Plummer, and Wills to deny medical care to and deliberately indifferent

of Johnson's medical needs and other similarly situated individuals.
And supervisors with knowledge of above said widespread behavior, policies, and customs (But not limited to), did not properly supervise or discipline employees, agents, or subordinate Defendants, so that the coercive behavior continued unchecked.

96. These widespread practices, were allowed to flourish because the leaders, supervisors, and policy makers of Defendants: Centurian, Wexford, Hughes, Wills, and Plummer directly encouraged and were, thereby the moving force behind the very type of misconduct and deliberate indifference at issue by failing to adequately train, supervise, and control their subordinate Defendants, employees, or agents on proper medical care and treatment and by failing to adequately punish and discipline, prior instances of similiar misconduct and deliberate indifferance, thus directly

encouraging future abuses such as those affecting Johnson.

97. The failure of Defendants Centurian, Wexford, J/J #3, Devenney, Crain, Dolce Chadderton, Gouro, and J/J et al., to provide Johnson with timely emergency care, pain medication, or to send Johnson to an outside hospital capable of providing medical care for Johnson's known Ⓛ hydrocel and enlarged prostate with a high PSA Level, All of which contributed to the pain, suffering, disruption of night time sleep patterns and daily activities, limited range of motion, limited mobility, excessive frequent urination and the possible undiagnosis of prostate cancer as stated in this complaint (But not limited to). Constitutes deliberate indifference to Johnson's serious medical needs inviolation of the 8th and 14th Amendments to the U.S. Constitution.

98. The failure of Defendants Wexford, Centurian, J/J #1, #2, #3, Devenney,

Crain, Dolce, Chadderton, Govro, and J/J et al., to send Johnson to an outside hospital for a 2nd hydrocele surgery on his known Ⓛ hydrocele and a biopsy on his known enlarged prostate and known high PSA Level. Which are responsible for the pain, suffering, and all the other known medical, physical, and emotional issues detailed in this complaint (But not limited to). As well as the possible undiagnosis of prostate cancer. Constitutes deliberate indifference to Johnson's serious medical needs inviolation of the 8th and 14th Amendments to the U.S. Constitution.

99. The failure of Defendants Wexford, Centurian, J/J et., to provide pain medication for Johnson's known Ⓛ hydrocele for more than a year prior to his hydrocele surgery; and 2 years and counting following his surgery. And failure to maintain Johnson's 0.8 mg of Flomax medication by allowing it to be cut in half. Also failing to send him

to an outside hospital to see a Urologist to inter alia prescribe pain medication and maintain Johnson's 0.8mg Flomax prescription. And perform any other further treatment deemed necessary or prudent. Constitutes deliberate indifference to Johnson's serious medical needs in violation of the 8th and 14th Amendments to the U.S. Constitution.

100. The failure of Defendants Centurian, Wexford, Hughes, Wills, Plummer, J/J #1, #2, #3, Devenney, Crain, Dolce, Gouro Chadderton, and J/J et al., to routinely and systemically and properly obtain and maintain medical records to avoid the events contained in this complaint constitutes deliberate indifference to Johnson's serious medical needs in violation of the 8th and 14th Amendments of the U.S. Constitution.

101. The failure of Defendants Wexford, Centurian, Hughes, Wills, and Plummer failure to correct known longstanding,

systemic deficies in the Healthcare system, train, supervise, discipline, and correct their subordinates: J/J #1, #2, #3, Devenney, Crain, Dolce, Chadderton, Govro, and J/J et al., when made aware of above said issues which deprived Johnson of his right to be free from cruel and unusual punishment as secured to him under the 8th and 14th Amendments to the U.S. Constitution and has resulted in actual physical and medical harm to Johnson.

102. The above widespread practices, so well settled as to constitute defacto policy of Wexford, Centurian, Hughes, Wills, Plummer, IDOC, Menard, and their subordinate Defendants, employees, and agents; were able to exist and thrive because policy makers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

102. In addition, the misconduct and deliberate indifference described in this Count was undertaken pursuant to the policy and practice of Defendants: Wexford, Centurian, Hughes, Plummer, Wills, IDOC, and Menard in that the Constitutional violations committed with the knowledge or approval of persons with final policy making authority for IDOC, Wexford, Centurian, Menard, Hughes, Wills, Plummer, and subordinate Defendants or were actually committed by persons with such final policy making authority.

103. The policies, practices, and customs set forth above have resulted in numerous well-publicized lawsuits based on the deliberate indifference to inmates at IDOC, serious medical needs; including the deliberate indifference issues in this Complaint in which Johnson was denied medical care for his serious medical needs by the above said Defendants (But not limited to).

104. Johnson's injuries were caused from and exacerbated by officers, employees, agents, and subordinate Defendants of Wexford, Centurian, Hughes, Wills, IDOC, Plummer, and Menard; including but not limited to the individually named Defendants, who acted pursuant to the policies, practices and customs set forth above in engaging in the deliberate indifference and misconduct described in this Count.

## COUNT II

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS STATE LAW CLAIM

105. Johnson incorporates each paragraph of this Complaint as if fully restated here.

106. The actions, omissions, and conduct of the Defendants and their subordinate Defendants as set forth above were extreme and outrageous. These actions

or inactions were rooted in an abuse of power and authority and deliberate indifference, and were undertaken with the intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Johnson, as is more fully alleged above.

107. As a direct and proximate result of the Defendants and their subordinate Defendants' actions, Johnson suffered and continues to suffer emotional distress and other grievous and continuing injuries and damages as set forth above.

COUNT III

RESPONDEAT SUPERIOR
STATE LAW CLAIM

108. Johnson incorporates each paragraph of this Complaint as if fully restated here.

109. While committing the deliberate indifference and misconduct alleged in the preceding paragraphs, the Defendants were employees, members, agents, and subordinate Defendants of Wexford, Hughes, Centurian, Wills, Plummer, Menard and IDOC acting at all relevant times within the scope of their employment.

110. Defendant Wexford is liable as principle for all torts committed by its agents, employees, members, and subordinate Defendants.

111. Defendant Centurian is liable as principle for all torts committed by its agents, employees, members, and subordinate Defendants.

112. Defendant Hughes is liable as principal for all torts committed by her agents, employees, members, and subordinate Defendants.

113. Defendant Wills is liable as principal for all torts committed by his agents, employees, members, and subordinate Defendants.

114. Defendant Plummer is liable as principal for all torts committed by his agents, employees, members, and subordinate Defendants.

## COUNT IV

## INDEMNIFICATION
## STATE LAW CLAIM

115. Johnson incorporates each paragraph of this Complaint as if fully restated here.

116. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

117. The Defendants were employees, members, agents, and subordinate Defendants of Centurian, Wexford, Hughes, Plummer, Wills, IDOC, and Menard, acting at all relevant times within the scope of their employment in committing the misconduct and deliberate indifference described herein.

118. Wexford is obligated by Illinois statute to pay any judgment entered against his employees, agents, members, and subordinate Defendants in their official and individual capacities.

119. Centurian is obligated by Illinois statute to pay any judgment entered against their employees, agents, members, and subordinate Defendants in their individual and official capacities.

120. Hughes is obligated by Illinois Statute to pay any judgment entered against her employees, agents, members, and subordinate Defendants in their individual and official capacities.

121. Wills is obligated by Illinois statute to pay any judgment entered against his employees, agents, members, and subordinate Defendants in their individual and official capacities.

122. Plummer is obligated by Illinois statute to pay any judgment entered against his employees, agents, members, and subordinate Defendants in their individual and official capacities.

# REQUESTED RELIEF

WHEREFORE, Johnson, requests that the Court grant the following relief:

A. Issue a declaratory judgment stating that:

1. The deliberate indifference to and the denial of medical care for Johnson's serious medical needs by Defendants: Wexford, Centurian, Hughes, Plummer, Wills, J/J#1 #2, #3, Crain, Dolce, Govro, Chadderton, Devenney, and J/J et al., violated Johnson's Constitutional Rights under the 8th and 14th Amendments to the U.S. Constitution.

B. Issue a preliminary injunction.
Standard for Preminary Injuncti n
For Johnson io obtain a preliminary injunction, he must establish:
(1) he will suffer irreparable injury unless ine injunction issues,
(2) The thr atened injury outweighs any damage the proposed injunclion might cause the opposing party,

(3) that the injunction, if issued, will not be contrary to the public interest, and
(4) that it has a substantial likelihood of success on the merits. Oklahoma ex rel. Oklahoma Tax Comm'n v. International Registration Plan, 455 F.3d 1107, 1112-13 (10th Cir. 2006). Where the first three requirements are met, a modified, less stringent, test as to the "success on the merits" element may apply. Davis v. Mineta, 302 F.3d 1104, 1101 (10th Cir. 2002).
(5) Johnson will suffer irreparable harm and possible death due to the spread of cancer in his prostate; as well as the continued pain and suffering from the hydrocele unless the injunction issued ordering Defendants to perform a Ⓛ hydrocele surgery and biopsy on his enlarged prostate at the same time.

(6) Johnson has shown that he would suffer irreparable injury and possible death if the injunction is not granted. Defendants will suffer little, if any harm if this Court grants this injunction.

C. Award compensatory damages in the amounts:

1. $250,000. jointly and severally against Defendants: Centurian, Wexford, Hughes, Plummer, Wills, J/J#1,#2,#3, Devenney, Crain, Dolce, Chadderton, Govro and J/J et al., for the physical and emotional injuries sustained as a result of Johnson being denied medical care.

2. $280,000. jointly and severally against Defendants Wexford, Centurian, Hughes, Plummer, Wills, J/J#1,#2,#3, Devenney, Crain, Dolce, Chadderton, Govro and J/J et al., as a result of their failure to provide immediate medical care and medications for Johnsons known (L) hydrocele and enlarged prostate with elevated PSA.

3. $150,000. jointly and severally against Defendants: Wexford, Centurian, Hughes

Wills, Plummer, J/J #1, #2, #3, Crain, Dolce Devenney, Chadderton, Govro and J/J et al., as a result of their failure to prevent the pain, suffering, possible disfigurement of Johnson's (L) hydrocele and possible undiagnosis of prostate cancer by their deliberate indifference to and their denial of medical care for Johnson's serious medical needs.

D. Award punitive damages in the following amounts:

1. $50,000 each against Defendants: Wexford, Centurian, Hughes, Plummer, and Wills.
2. $25,000 each against Defendants: J/J #1, #2, #3, Devenney, Crain, Dolce, Chadderton, Govro, and J/J et al.,

E. Grant such relief as it may appear that Johnson is entitled.

Respectfully submitted
William Johnson prose
William Johnson #M01525
P.O. Box 1000
Menard, Il 62259

Pursuant to 28 U.S.C. § 1746, I declare and verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on 10 October 2026

William Johnson
William Johnson

# VERIFICATION BY CERTIFICATION

PURSUANT TO THE PENALTIES PROVIDED BY LAW UNDER SECTIONS 1-109 OF THE ILLINOIS CODE OF CIVIL PROCEDURE (735 ILCS 5/1-109) AND 2-605 (735 ILCS 5/2-605), 28 USC 1746 OR 18 USC 1621, THE UNDERSIGNED CERTIFIES THAT THE STATEMENTS SETFORTH IN THIS INSTRUMENT ARE TRUE AND CORRECT, EXCEPT AS TO MATTERS THEREIN STATED ON INFORMATION AND BELIEF AND AS TO THOSE SUCH MATTERS THE UNDERSIGNED VERILY BELIEVES THE SAME TO BE TRUE.

William Johnson PRO SE

WILLIAM JOHNSON #M01525
P.O. BOX 1000
MENARD, IL 62259

IN THE
UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF ILLINOIS

WILLIAM JOHNSON
Plaintiff/Petitioner

Vs.

No. ______

WEXFORD ET AL.,
Defendant/Respondent

## PROOF/CERTIFICATE OF SERVICE

E-FILE

TO: CLERK U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ILLINOIS

TO: ______

PLEASE TAKE NOTICE that at: 9:00 AM/PM 09 OCTOBER, 2026 I placed the documents listed below in the institutional mail at MENARD Correctional Center, properly addressed to the parties listed above for mailing through the United States Postal Service.

1983 COMPLAINT

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/1-109 I declare, under penalty of perjury that I am a named party in the above action, that I have read the above documents, and that the information contained therein is true and correct to the best of my knowledge and belief.

DATED: 10/09/2026

/s/ William Johnson
Name: WILLIAM JOHNSON
IDOC No. M01525
MENARD Correctional Ctr.
POB 1000
MENARD, IL 62259

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
prisoner.esl@ilsd.uscourts.gov

ELECTRONIC FILING COVER SHEET

Please complete this form and include it when submitting any type of document, letter, pleading, etc. to the U.S. District Court for the Southern District of Illinois for review and filing.

Johnson, William
Name

M01525
ID Number

Please answer questions as thoroughly as possible and circle yes or no where indicated.

1. Is this a new civil rights complaint or habeas corpus petition? **(Yes)** or No

   If this is a habeas case, please circle the related statute: 28 U.S.C. 2241 or 28 U.S.C. 2254

2. Is this an Amended Complaint or an Amended Habeas Petition? Yes or **(No)**

   If yes, please list case number: __________

   If yes, but you do not know the case number mark here: _____

3. Should this document be filed in a pending case? Yes or **(No)**

   If yes, please list case number: __________

   If yes, but you do not know the case number mark here: _____

4. Please list the total number of pages being transmitted: 79

5. If multiple documents, please identify each document and the number of pages for each document. For example: Motion to Proceed In Forma Pauperis, 6 pages; Complaint, 28 pages.

| Name of Document | Number of Pages |
|---|---|
| | |
| Complaint | 79 |
| | |
| | |

Please note that discovery requests and responses are NOT to be filed, and should be forwarded to the attorney(s) of record. Discovery materials sent to the Court will be returned unfiled.